IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Sun Life Assurance Company of Canada,<br><br>    Plaintiff,<br><br>v.<br><br>Wells Fargo Bank, NA, as Securities Intermediary,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Sun Life Assurance Company of Canada ("Sun Life"), by and through its attorneys, Drinker Biddle & Reath, LLP, hereby files this Complaint for Declaratory Judgment and, in support thereof, alleges and states as follows:

## INTRODUCTION

1. This is an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, stemming from the procurement of a $5 million insurance policy (the "Policy") on the life of Nancy Bergman ("Ms. Bergman") and a claim for the death benefit under that Policy submitted to Sun Life by Defendant Wells Fargo Bank, N.A., as Securities Intermediary ("Wells Fargo").

2. Sun Life is entitled to the relief it seeks because it is unclear whether the Policy was supported by a valid insurable interest at inception. Specifically, the facts and circumstances surrounding the application and procurement of the Policy raise issues concerning (i) whether there was an agreement or understanding at the time the Policy was issued that the Policy (or any interest thereof) was to be assigned or sold to someone having no insurable interest in the life of Ms. Bergman; (ii) whether the Policy was intended to protect against an actual risk of loss facing Ms. Bergman's family in the event of her death; and (iii) whether Ms. Bergman paid any

premium toward the Policy. Accordingly, there is an actual controversy as to whether the policy is void *ab initio* due to a lack of insurable interest at inception.

3. Sun Life seeks equitable relief in the form of a declaration regarding whether the Policy is void *ab initio* because it was unsupported by a valid insurable interest at issuance. Sun Life further seeks a declaration regarding whether it is entitled to offset any return of premium against the costs and other losses it incurred in connection with the Policy.

## PARTIES

4. Plaintiff, Sun Life Assurance Company of Canada, is a life insurance company organized and existing under the laws of Canada, with its principal place of business at One Sun Life Executive Park, Wellesley Hills, Massachusetts. Sun Life is a citizen of the Commonwealth of Massachusetts.

5. Upon information and belief, Defendant, Wells Fargo Bank, N.A., as Securities Intermediary ("Wells Fargo"), is a national bank with its principal place of business located at 299 S. Main Street, Salt Lake City, Utah. Wells Fargo is a citizen of the State of Utah.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States, particularly the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court also has jurisdiction under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between Plaintiff and Defendant.

7. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391(a), because a substantial part of the events giving rise to each of the claims occurred herein. Among other things, the Policy was applied for and owned by a New Jersey domiciled trust; the

application was signed in New Jersey; the policy was delivered and signed for in New Jersey; and Ms. Bergman was solicited to participate in the application for insurance in New Jersey.

## FACTUAL BACKGROUND

### A. Stranger-Originated Life Insurance

8. In recent years, a secondary market for life insurance has emerged, in which existing life insurance policies are sold to third-parties who lack an insurable interest in the life of the insured. This type of sale, which is typically referred to as a "life settlement" or "senior settlement," can, in certain limited circumstances, be lawful, provided that the policy was procured for legitimate purposes and that there was an insurable interest at the inception of the policy.

9. In its simplest form, such an investment vehicle is created when a life insurance policy is applied for and issued at the behest of individuals or entities – with no insurable interest in the life of the insured – who procure the policy for the purpose of later transferring it to investors in the life insurance secondary market. Such arrangements are commonly referred to as IOLI, which stands for "investor-originated life insurance," or STOLI, which stands for "stranger-originated life insurance" (these transactions are referred to as "STOLI" herein).

10. Though the STOLI market is relatively new, the underlying concept is not; in the late nineteenth and early twentieth centuries, the United States Supreme Court opined against unlawful "wagering policies," and the "sinister counter interest" in the death of the insured that results from the issuance of such policies.

11. State insurable interest laws, which protect the integrity of life insurance by requiring that a policy-owner have a cognizable interest in the longevity of the insured at the time the policy is issued, provide a safeguard against STOLI arrangements. However, STOLI speculators attempt to circumvent these laws by carefully constructing their transactions to hide

the fact that the policies are not being procured to satisfy legitimate insurance needs, but instead are being procured as impermissible investments.

12. Characteristics of a typical STOLI policy include the following:

- The policy applied for has a large death benefit and is issued on the life of an elderly insured;

- The beneficiary of the policy is a newly-formed trust ostensibly created for the purpose of estate planning, financial planning or the like;

- A third party funds the premium payments by providing the insured with the financial means to purchase the policy as part of a pre-negotiated agreement; and

- The policy was intended from the outset to be transferred shortly after the expiration of the policy's two-year contestability period.

13. While there are many variations, all STOLI schemes have one objective in common: to give investors with no insurable interest in the life of the insured a stake in a life insurance policy on the life of a stranger.

**B.   The Bergman Policy**

14. On or about April 23, 2007, Sun Life received an application seeking $5 million in life insurance coverage on the life of Ms. Bergman (the "Application"). A copy of the Application is attached as **Exhibit A**. At the time of the Application, Ms. Bergman was eighty-two years of age.

15. The Policy was applied for by the recently established Nancy Bergman Irrevocable Insurance Trust, dated 4/6/2007 (the "Trust"). The Trust acted as the record owner,

beneficiary, and payor of the proposed Policy. Ms. Bergman's grandson, Nachman Bergman ("Mr. Bergman"), was identified as the trustee of the Trust.

16. Ms. Bergman, as the proposed insured, signed the Application on April 19, 2007 in Lakewood, New Jersey. The Application was also signed by David Kohn ("Mr. Kohn"), the agent, and Mr. Bergman, as the trustee of the applicant Trust. The "Signature Section" of the Application also contained declarations by Ms. Bergman, Mr. Bergman, and Mr. Kohn that "the statements and answers in this Application are complete and true to the best of my/our knowledge and believe that they are correctly recorded." Exhibit A, at 6.

17. Thus, in completing the Application, the signatories knew that they were required to provide truthful, accurate, and honest responses to the questions presented. Furthermore, they knew that Sun Life would rely upon the statements recorded on the Application in determining whether to issue the Policy with the face amount requested, or whether to issue the Policy at all.

18. In connection with the Application, Sun Life also required the submission of a Life Insurance Source of Premium Eligibility Worksheet (the "Worksheet"). On the Worksheet, signed and submitted to Sun Life on May 9, 2007, Mr. Kohn indicated that the premium for the Policy would not be financed by a loan, either at the time of issuance or in the future. The Worksheet also asked (i) whether the Policy had been sold as part of a life settlement, and (ii) whether there had been any discussions about selling the Policy or the Trust to a life settlement company or third-party investors within the next five years. Mr. Kohn answered "No" to each of these questions. A true and correct copy of the Worksheet is attached hereto as **Exhibit B**.

19. Also in connection with the Application, Mr. Bergman, as trustee of the applicant Trust, signed a Request for Alteration of Application. The Request for Alteration of Application indicated that the owner, beneficiary, and payor of the Policy would be the Trust, listed the

Trust's address as 34 Whispering Pine Lane, Lakewood, New Jersey, and indicated that the Trust was established in New Jersey. He also indicated an annual Planned Periodic Premium for the Policy in the amount of $299,238.00. Mr. Bergman signed the Request for Alteration of Application on behalf of the Trust applicant on August 7, 2007, in Lakewood, New Jersey. A true and correct copy of the Request for Alteration of Application is attached hereto as **Exhibit C**.

20. On or about July 13, 2007, in reliance upon the representations contained in the Application and other documents and information submitted to Sun Life in conjunction with the Application, Sun Life issued the Policy with a face amount of $5 million (policy number 020148690).

21. A delivery receipt for the Policy was signed on August 7, 2007, in Lakewood, New Jersey, by both Mr. Bergman and Mr. Kohn. A true and correct copy of that delivery receipt is attached hereto as **Exhibit D**. An initial premium payment of $308,800.00 was made for the Policy on or about July 13, 2007. Upon information and belief, the initial premium payment was not paid for by Ms. Bergman or any person possessing an insurable interest in Ms. Bergman's life.

22. In January 2010, shortly after the expiration of the Policy's contestability period, ownership of the Policy was formally transferred from the Trust to Defendant Wells Fargo.

23. In July 2014, following Ms. Bergman's death, Defendant Wells Fargo submitted a claim for the death benefit due under the policy.

## COUNT I

## DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

24. Sun Life hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

25. The Policy bears certain specific characteristics of a classic STOLI policy:

- The application was for a $5,000,000 policy on an eighty-two year-old woman;

- The Policy was applied for by a newly formed trust, which acted as owner and beneficiary;

- Because, upon information and belief, that Ms. Bergman had no need for $5,000,000 in life insurance and lacked the finances to pay an annual premium of approximately $300,000.00, it appears that the Policy was procured for the benefit of and financed by a stranger to Ms. Bergman; and

- The Policy was transferred shortly after the expiration of the contestability period.

26. Due to the indicia of STOLI surrounding the Policy, Sun Life requests that this Court make the following determinations:

- Whether the Policy was procured pursuant to a plan and agreement predating the issuance to ultimately transfer the Policy to investors with no insurable interest in Ms. Bergman's life.

- Whether the purpose of the Trust was to skirt the applicable laws regarding insurable interest and to conceal from Sun Life the lack of insurable interest in connection with the Policy.
- Whether the purpose of the Policy was to benefit one or more stranger-investors in the event of Ms. Bergman's death.
- Whether the purpose of this transaction was to gamble upon Ms. Bergman's life.

27. Sun Life seeks a judicial declaration as to whether the Policy lacked an insurable interest at inception and, therefore, is void *ab initio*.

28. If this Court declares that the Policy is void *ab initio*, Sun Life is entitled to damages for the expenses incurred as a result of the issuance of the Policy, including the retention of premium paid to offset costs and other losses it incurred in connection with the Policy.

## **RELIEF REQUESTED**

WHEREFORE, Sun Life respectfully requests the entry of an Order by this Court as follows:

A. Declaring whether the Policy is void *ab initio* due to a lack of insurable interest at the inception of the Policy;

B. Declaring whether Sun Life is entitled to offset any amount of premium ordered to be returned by the costs and any other losses Sun Life incurred in connection with the Policy;

C. An award of Sun Life's attorneys' fees and costs associated with seeking this judgment, as determined by the Court; and

D. An award of such further relief as this Court deems appropriate.

Dated: September 17, 2014                DRINKER BIDDLE & REATH LLP

                                               By: _____
                                                   Jason Gosselin
                                                   One Logan Square, Suite 2000
                                                   Philadelphia, PA 19107
                                                   (215) 988-2700
                                                   Jason.Gosselin@dbr.com

                                                   *Attorneys for Plaintiff,*
                                                   *Sun Life Assurance Company of Canada*