UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

SUN LIFE ASSURANCE COMPANY OF CANADA,

               Plaintiff,

v.

WELLS FARGO BANK, NA,

               Defendant

**Civil Action No.: 14-cv-05789 (PGS)**

**MEMORANDUM AND JUDGMENT**

      In a prior Memorandum and Order (ECF No. 68), I had ordered that Sun Life refund the premiums paid by Wells Fargo on the Bergman life insurance policy[1]. As a result, on October 20, 2016, I conducted an evidentiary hearing on whether any of the premiums should be refunded to Wells Fargo.

      The only witnesses to testify at the hearing was Mr. Christopher Young. Mr. Young is employed by Wells Fargo in the capacity of Vice President of the Corporate Trust Longevity Group ("Longevity Group"). The main purpose of the Longevity Group is to administer life settlement assets. Mr. Young described life settlement assets as "if somebody lives long or short, whether that asset pays off due to a mortality risk." (T. 24, 8–14).

      The parties to this litigation agree that there were three different groups or individuals that paid premiums. The parties also agreed that the three groups were LTAP, ATC Realty, and the original investors. Mr. Young explained who and/or what entities comprised each group.

---

[1]     The facts of the case are set forth in the Memorandum and Order (ECF No. 68), and are adopted into this decision.

The first group that paid premiums are the original investors. These investors paid premiums on a policy held by a trust that insured Mrs. Bergman's life. The premium payments by the original investors are as follows:

| | |
|---|---|
| 4/9/2007 | $308,800.00 |
| 4/11/2008 | $170,000.00 |
| 6/12/2009 | $69,801.50 |
| 7/10/2009 | $31,000.00 |
| 8/18/2009 | $40,000.00 |
| 9/24/2009 | $32,000.00 |
| 11/10/2009 | $29,000.00 |
| 12/23/2009 | $32,200.00 |
| | $712,801.50 |

Neither Wells Fargo nor Sun Life showed any factual nexus connecting these payments to Wells Fargo's involvement in this policy. Absent same, the Court does not find any equitable reason to require recoupment of this amount from Sun Life.

At some point, the original investors sold their interest in the policy to LTAP -- the second group of investors. According to Mr. Young, LTAP had a business relationship with Wachovia from 2007 through 2009. Thereafter, Wells Fargo and Wachovia merged, and the LTAP account continued with Wells Fargo. (T. 25, 11-13). With regard to the Sun Life/LTAP relationship, Wells Fargo acted as a securities intermediary. The duties of the securities intermediary is to act as a custodian, verification agent, and escrow agent of a life insurance policy. (T. 25, 14–23.)   Mr. Young acknowledged that a securities intermediary is "called upon because the life insurance policy, either itself or in a portfolio of the policies, is considered a

security and you're acting as an intermediary on behalf of investor clients, therefore you become a securities intermediary." (T. 27, 7 – 9).

From the insurer's perspective, Mr. Young explained that Wells Fargo is both the owner and beneficiary of the insurance policy; and Wells Fargo, as opposed to Sun Life, considers itself to be a custodian of an asset (insurance policy) and it manages the asset through a securities account on behalf of LTAP, the holder.  For example, if the insured dies (Mrs. Bergman), Wells Fargo would ordinarily process the claim with Sun Life, and when it receives the pay-out of the policy from Sun Life, Wells Fargo distributes the proceeds to the holder, LTAP.

Mr. Young testified that Wells Fargo loaned LTAP monies to pay the premium (T. 30, 5). He called such an arrangement a "common structure" within the industry. (T. 30, 10). When a lender loans the money to LTAP, the Longevity Group acts as a securities intermediary, and holds the asset (policy) as collateral, and by drawing down on the loan, pays the premium to Sun Life.  (T. 30, 10–15) .

At some point, LTAP filed for bankruptcy.  None of the amounts loaned to LTAP by Wells Fargo for payment of premiums to Sun Life were satisfied.   As such, Wells Fargo filed a claim in bankruptcy court. Wells Fargo settled with the trustee for the collateral (insurance policy) (T. 40, 7-17; T 48, 17 through T. 49, 13).

Wells Fargo argues that these loan amounts should be refunded to it.  Exhibit D-2 lists these payments:

| Date | Amount |
|---|---|
| 03/05/2010 | $70,292.54 |
| 07/08/2010 | $77,201.72 |
| 08/06/2010 | $26,611.80 |
| 09/07/2010 | $26,611.80 |
| 12/07/2010 | $72,718.07 |

| | |
|---|---|
| 02/18/2011 | $113,375.58 |
| 03/28/2011 | $29,605.00 |
| | $416,416.51 |

Sun Life disagrees with the payment of the unsatisfied loan amount. Sun Life argues that Wells Fargo resolved the matter in bankruptcy court by accepting the collateral (the policy) in satisfaction of its claims.  Sun Life contends that Wells Fargo has the same rights as the policy holder which means the policy is null and void pursuant to my prior decision.  Although Sun Life's argument has some merit, this is an equitable remedy and the Court must look at the outcome to determine the fairness of the result. Here, there is no doubt that Wells Fargo loaned monies to pay premiums to Sun Life; Sun Life accepted the premium payments, and then Sun Life initiates this lawsuit to declare Wells Fargo's rights under the policy is null and void. Under the circumstances, Sun Life has been benefited by my original decision since it was relieved from payment of the $6 million death benefit; but it is unfair to maximize this benefit when it accepted those premiums, and Wells Fargo lost money.  The monies should be refunded to Wells Fargo.

The last group of investors is ATC Realty, an affiliate of  Wells Fargo[2].  When Wells Fargo resolved the bankruptcy matter, Wells Fargo placed the policy in ATC Realty in order to efficiently manage the policy.  ATC Realty's role is to invest in assets such as this insurance policy, and to maximize the return to Wells Fargo.  ATC Realty paid premiums in furtherance of its role.  ATC maintained the Longevity Group to act as a securities intermediary.   On Exhibit D-2, ATC Realty made the following premium payments:

---

[2]   Sun Life does not dispute this fact. There was little dispute about the amount being paid to Wells Fargo.

| | |
|---|---|
| 06/07/2011 | $188,000.00 |
| 10/06/2011 | $74,809.50 |
| 01/06/2012 | $74,809.50 |
| 04/05/2012 | $74,809.50 |
| 06/20/2012 | $74,809.50 |
| 07/18/2012 | $58,168.00 |
| 06/21/2013 | $44,753.00 |
| 09/24/2013 | $54,361.00 |
| 12/16/2013 | $57,427.00 |
| 03/18/2014 | $63,583.00 |
| 06/18/2014 | <u>$63,583.00</u> |
| | $829,113.00 |

These premium payments should be refunded to Wells Fargo. They represent actual premiums paid, and equity demands return of those funds.

Exhibit D-3 shows that interest in the amount of $20,980.97 is due between 2010 through October 30, 2016. It is a reasonable amount, and Wells Fargo suffered the loss. That amount should be paid.

In conclusion, Sun Life is ordered to pay LTAP premiums ($416,416.51), ACT Realty premiums ($829,113.00) and interest ($20,980.97) totaling $1,266,510.48.

ORDER AND JUDGMENT

IT IS on this 16th day of November, 2016;

ORDERED that judgment be entered in favor of Wells Fargo in the amount of $1,266,510.48, and against Sun Life.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.